that you would lose? Is that? Judge, I don't speak Spanish. I don't know what it says, but I certainly couldn't have raised the objection that I did at trial. You had to get it translated before trial, right, to determine you didn't have a good faith basis. Judge, I've seen them before, and it would have been a much more difficult, if not impossible, challenge to make if, in fact, the consent to search form had been admitted. On the other hand, the defendant's actions in deleting the critical information on his phone during the time, or after giving consent, but consent to look at the phone, but before surrendering the phone, shows that he did not knowingly agree to have his phone forensically analyzed, or he would have known that what he did was in essence. Well, wait, why would you delete stuff if you don't think law enforcement's going to look at it? He thought he would look at the phone, i.e. go through it with the information that he gave them, see there were no contacts because he had erased them, see there were no photos because he had erased them, see there was not that phone call from Texas to Florida because he had erased all that. Right, so he was doing it because he anticipated they would look into versus at his phone. Well, Judge, respectfully, I disagree. I submit that he did that thinking that all they were going to do was pick up his phone and scroll down whatever he showed him to look at, not that the phone would be forensically analyzed using the Cellbrite programs. Is there any evidence that he so limited his consent? Well, Judge, the testimony was conflicting by the translating detective. He was not a member of the task force. He assisted the task force members by translating. On direct, he said that he was allowed, that he got permission to look into the phone. When I cross-examined him, he said that he was given permission to look at the phone. Admittedly, our position is that that's conflicting and therefore the government failed to carry its burden of demonstrating a valid extent to the scope of the examination of the phone. The arguments at trial dealt with whether or not the challenge to the admissibility was waived, not to the extent of the scope, not to the extent of the consent that was given. Our position is that at trial that issue was not raised by the government, nor respectfully was it raised in any detail in the briefs. The only issue the government has raised is that the motion should have been filed before trial based on evidence. And the reason it should have been filed before trial is because once the jury has been sworn, jeopardy attaches, and then the government loses its opportunity to appeal an adverse ruling. I understand that, Judge. The government also had the opportunity to make sure that its consent was admissible by having the form translated. That's true, isn't it? I'm sorry? If there's an adverse ruling, the government would lose its right to appeal. So that's why these motions have to be filed before trial. That's true, and I submit that there's also a conflict. That's what Rule 12 requires. That's why Rule 12 requires that motions to suppress be made pre-trial. Right, and Rule 12 also refers to objections giving rise to, I think, a fair inference that sometimes you can raise an objection despite Rule 12 because of the evidence at trial, which is what happened in this case. We're discouraged from filing what could be frivolous motions from going on fishing expeditions. At the time pre-trial, there was no indication that the scope and validity of the consent to search form was ruled inadmissible. I think we have your argument. Thank you, Mr. Finn. We'll hear from Mr. Gaviria. Good morning. May it please the Court. Frank Gaviria on behalf of Appellant Claudia Matute. May it please the Court opposing counsel. Your Honor, we ask the Court today to give teeth and the Fifth Amendment requirement that no conviction can stand unless there's proof beyond exclusion to all reasonable doubt. In this particular case, the government, with respect to the knowledge requirement under 18 U.S.C. 659, the receipt and possession of the stolen goods was devoid of showing any knowledge. The government billed the House of Cards on the proposition that her house on April 22nd. There was no evidence in the record to show that she was present on April 22nd, April 23rd, April 24th. Well, guilty knowledge can be inferred by the circumstances, right? We've said that. We've got a lot of precedent that says that, right? But again, the circumstances merely showed that on April 27th, she was present. She got a knock at the door. There's more than that. The cargo arrived at her home late the same night under the cover of darkness, and then it was there for five days, stacked in the piles six feet high, covered with black tarp in her driveway. She claimed ignorance and responded, take it. We don't care. It's yours. And those actions are not consistent with a claim of knowledge from those circumstances. I would submit that those inferences or those circumstances are only probative if there is any evidence that she was present on the day that the pallets were delivered and that she was present at all during the time period where those pallets remained on her property. It's also less probative when there's other evidence presented that there were several other individuals that either lived or when they ran the license plates, came back to that particular home. Judge Wilson just laid out a factual scenario that viewing the evidence in the light most favorable to the government as we must, a reasonable jury could conclude, right? Again, I believe that that proposition only stands if they can link that inference. That is, that she was aware that the pallets were on her property. She was there when they came. It's beyond, I mean, you're not going to miss that. I can't the jury look at the picture, look at the fact she was there, look at the fact that she said it was olive oil and conclude that she was lying about the olive oil and that she knew it was there. I believe all those factors are probative again if there's some scintilla of evidence that she was present throughout this time period and I believe that there's none. You have to be, I mean, if I had something delivered to a storage locker, I'm not present there and yet I might know and the jury could conclude I knew from the fact that I gave someone access that there was a ton of stuff there that I had seen it and done nothing about it. I mean, why does presence, explain to me what I'm missing, why presence has something to do with this? I believe presence has something to do with it because that's the only way that you can, that the fact that it was on her property becomes probative. But it's open and obvious on her property. That is correct, but there's no evidence when she first saw it. It could have been she arrived on the morning of the 27th when the law enforcement knocked on her door. I believe that coupled with the deliberate. She, and I'm sorry, I don't know this, but did she put that in the front of the jury somehow that that's when she first arrived? That was not on property. That was not presented to, that was not presented to the, to the jury, your honor. But I believe that that issue, the lack of knowledge, in addition with the deliberate ignorance instruction again, and I believe the Rivera court cautions against using the deliberate ignorance instruction and that it should be used only in those comparatively rare cases where there are facts that point in the direction of deliberate ignorance. If not, a jury can convict on a basis akin to a standard of negligence. We would apply harmless error standard of review to the deliberate ignorance instruction issue, right? I believe that the lack of direct knowledge that she was, that she, that she knew that the pallets that were stolen, that she should have known that there were stolen. This was a Spanish speaking individuals. The apparent nature of the boxes were not, was not readily ascertainable. They merely said that they were, that it was fragile. Um, I believe the name of the perfume on them, there was the name of their perfume, a yellow sticker on, I believe based on a review of the record on the photographs on, on merely some of the boxes. She had a Spanish interpreter. There was no evidence that she could read English. This was not deliberate ignorance, which is typically used in narcotics cases where someone receives packages under a suspicious nature and essentially they don't take any steps to confirm or deny whether or not there's contraband or narcotics. In this particular case, there was no evidence of any actions on her behalf to avoid finding the knowledge with respect that what these boxes actually were. We have your argument, Mr. Gaviria. Thank you. We'll hear from the government, Mr. Alexander. Okay. Alexander on behalf of the United States government seat at government's table is assistant us attorney Brian shack. He was one of the two trial counsel. Your honor made police, the court opposing counsel, you know, with the permission of court, I'll first address the argument raised by Mr. Corio. So regarding the motion to counsel did not raise his argument until the sixth day of trial and the basis for that under, well, under rule 12 C3, it does recognize that untimely motions may be considered by a district court judge if there's good cause. The problem, however, is there is no good cause in this case. Well, he says he has good cause because he doesn't want to file a frivolous motion. He didn't know there was a basis for his motion until the government in essence, according to him, screwed up by not being able to get in this consent form. And at that point, it's the first time where the scope became relevant because his oral consent was much less than his written consent. So why isn't that good cause? Well, first of all, your honor, the, at the time of trial, the government's focus is to prove each of the elements beyond a reasonable doubt for each of the charged offenses. Our focus in getting that written consent form in will go to the sufficiency of the evidence. It would not go to whether or not this motion can be raised, but regardless of the fact, but if you didn't have the consent, his argument is if you don't have the consent form, now I've got a good faith basis. Well, the good faith basis focuses on the oral consent. He's arguing that the scope of the oral consent is more limited than what he knew prior to trial. The problem, however, is that the record does not support that. What counsel doesn't mention in his conversation with the district court judge, if I can refer the court to docket entry 181 pages six through 20, UC defense counsel stating that the agent testified that the agents asked to look at the phone. He mentions this phrase, look at the phone 11 times. What he doesn't mention is that special agent glass at the federal bureau of investigation testified docket entry one 80 page 89 that he had asked Mr. Corioza to allow the agents to quote, examine the phone. That's glasses, exact words, examine the phone. You don't hear counsel mentioning that you then look at detective Perez at the medley police department. He was a translator. He testified on direct examination, docket entry one 80 page one 17 that the officers, that the agents asked to look into the phone. So now you have examined and into radically different from this characterization of look at the only time the words look at even appear is when defense counsel is cross examining detective Perez. And it was defense counsel who recites the phrase look at repeatedly four times. The first time he a forensic examination is of a completely different nature from getting the login, the access code to the phone and scrolling through what's on the phone, isn't it? To a certain degree, it can be your honor, but we have to look at the totality of the circumstances of the situation. What we have is Mr. Coriozo driving 30 minutes, even though he was told by the FBI, you don't have to come. You don't have to consent. He then drives 30 minutes. The FBI provides his phone number and his pin code. He then reads over the written consent form. He signs it and then he provides his phone. How long does a forensic analysis take? It's not in the record, your honor. So I don't have that information as to how long. But I mean, it seems to me, to judge Pryor's point, why, if you're looking into the phone, if you say you want to look into my phone and I give you my phone, I think you're going to scroll through it and give it back. I think in that situation, your honor, when we look at the facts, it appears that Mr. Coriozo did understand exactly what officers were trying to imply because he didn't impose any sort of limitation or make any statements that I don't understand or stating that you only have consent. Did anyone ask him if they can perform a forensic analysis of his phone? The only testimony we have, your honor, is Special Agent Glass, who stated that he had asked Coriozo to allow officers to examine the phone. So beyond that, the record shows examine the phone and into the phone. The words look at come from defense counsel. Detective Perez never utters the words look at. And that's different from the argument that he's trying to present here. But the fact that Coriozo made all these steps, if he wanted the agents to look at the phone in his presence, he could have done it right there at the pro intermodal facility, not drive 30 minutes to the FBI headquarters. But it's the government's positions this, your honor. What we do know is that he deleted the contact information, the photographs, the text messages, the call logs between him and all the other co-conspirators. And it's the government's position that he did this because he wanted to divert law enforcement's attention, because he believed that once it's deleted, it's gone. So if law enforcement looked at his phone, found no evidence of his communication with these co-conspirators, that helps him out. It's the same reason he told law enforcement that he had actually driven to Texas and that theft occurred in Texas. Because if that's the case, it shows that he's essentially the victim in all of this, that he was oblivious to any of the theft. So this just kind of stacks up in his favor in terms of what his defense is ultimately going to be, that I have no idea what's going on. So the government's position is this. He knew what was being asked of him. He had no problem with the officers looking at his phone because it was gone. But what he didn't realize is that a forensic examination could very well retrieve deleted information. And your honors, if you have no further questions on this issue, I'll shift over to the issue raised by defense counsel for Matute. In that argument, your honor, in regards to the sufficiency of the evidence and whether or not the deliberative ignorance instruction was appropriate, the government's position that it was appropriate. When we look at the evidence in the light most favorable to the government, making all reasonable inferences and credibility choices in the government's favor, the evidence is more than sufficient here. What we do have, based on the record, is that on April 22nd, 2016, 22 pallets worth of merchandise, stolen perfume was taken from a truck driven by Correoso and unloaded and then loaded into two rental trucks that ultimately went at nightfall to Matute's residence. No evidence she was involved in that, right? No evidence that she was involved in that. That's correct, your honor. So where do you get her knowledge? I mean, the first piece of evidence you have is when the officers arrive and she says, I don't know what's there. Part of the focus on knowledge, your honor, is the fact that she owns the property. She's lived the property for a number of years, that she has control of this property. Because as the government's position is, when we take a reasonable, if we can reasonably infer, individuals engaged in the theft of this type of cargo are not going to unload this cargo on property without the owner's consent, because there's always the risk the owner can notify law enforcement of any suspicion. The theory is her husband gave, her ex-husband gave consent. That was not in the trial record, your honor. That's information that was presented outside the scope of the trial transcript. So why shouldn't she get a new trial based on newly discovered evidence? If her ex-husband says she didn't know anything about this, it's all my fault. Based upon that argument, your honor, the government's position is, one, that this information was known to her prior to trial. This was information that she could have obtained through due care, and regardless, it's not going to affect the ultimate sentence. If we can refer to the court, if I can refer the court to docket entry 178, page 30, defense counsel tells the jury in opening statement that Matute trusted someone who put all these pallets on her property, that she just trusted someone to do that. At no point does defense counsel identify who this mysterious individual is, but it appears to be consistent with the ex-husband. If she's a party to all this, why wasn't she charged with conspiracy? Your honor, I think based upon the government's decision and looking at the evidence, we were going to focus on the receipt and possession as well as the false statement as the basis of the charges. In terms of whether or not we charge conspiracy, your honor, it's a prosecutorial decision. It's just a decision making in terms of what evidence we had connecting her to the other individuals. But regardless, your honor, in terms of the motion for new trial, the reason that it should not be applied is primarily because this is evidence she should have known. The ex-husband in his affidavit, docket entry 184-1, notes that Matute knows that he stores items on her property, but he lists items such as trucks and flatbeds. That's different from 22 pallets that are stacked six feet high for an individual who is only five feet tall. I mean, you can look at the evidence in this case and come to the conclusion that she knew there was property that was coming onto her property and that it was covered with tarp, six feet high, and it shouldn't have been there. But where's the evidence that she knew that it was stolen property? That it was stolen property? When I go look at the transcript, where's the evidence that establishes that she knew that that property was stolen? The government spoke in that case, your honors, beyond just the size and the location on her property as exhibited through the photographs of 28th through 20N. It's the fact that Matute's own interaction with law enforcement, she was one when confronted by officers, she was visibly nervous, hostile to officers, and then when they asked what was underneath, she exited her residence, pulls a tarp. A lot of people are nervous when confronted with law enforcement. Oh, of course, your honor. But I'm not asking the court to affirm the conviction solely on that basis. I'm asking to take that factor in conjunction with everything else. That's the critical determination, though, is whether or not she knew the property was stolen. Correct. I mean, she knew that, I mean, you can infer that they brought the property there and you know, it didn't belong to her or her husband, and that it was there for five days, but as far as that she knew that the property was stolen? The government's focus on that, your honor, is the false statement. The fact that she exited her residence, pulled up the tarp, and immediately stated it. But she said it was olive oil when it turned out to be perfume. Correct. And that's it? Not only that, your honor, it's the fact that there's nothing on the boxes that indicate that it was olive oil. The fact that she would have no reason to lie to law enforcement unless it was with the intent to deceive them, to mislead them. And then when officers asked, Special Agent Martinez of the Federal Bureau of Investigation asked her, can we look under the tarp? Not that we will seize the items, not that you're a liar. It's simply, can we look under the tarp? She became rude again, reenters her residence, and at the time we don't care. And to the government's point is that we is very important. It's a very specific possessive pronoun. It's not I don't care, he doesn't care, she doesn't care, they don't care. We. She's speaking on behalf of someone else saying this property that's here that you want to look at. Not that you've established any claim to it, that you just want to look at. We don't care. So the government's perspective, your honor, based on that statement, based on her statement after the fact to the government shows that she had actual knowledge or that she purposely contrived not to learn all the facts in order to have a defense. And if I could circle back, your honor, to the question you had asked about the motion for new trial. The reason that's not appropriate is that the government's position of the defense did not exercise due care in order to ascertain all the facts if they legitimately did not know some of these details. In the affidavit from the ex-husband, again, docket entry 184-1, page 2, you see that the ex-husband states that he had spoken to the public defender's investigator who asked him on a speakerphone, if you know Roberto, Mabel, Elegio by their first name. Nothing in that affidavit suggests it was a full name. Nothing in the affidavit suggests that the investigator ever met with the ex-husband in person and showed him photographs. And that's incredibly important. There's nothing in that affidavit to suggest he was questioned about where he was on April 22nd. Was he aware of these boxes? For him to state just openly that Matute had no knowledge is not sufficient because, first of all, it's hearsay and speculative. We don't know what she knew based upon except with what's in the record. For him to come out and say she had no idea is insufficient because all he can say is I did not tell her. But even that type of statement would not come in at trial. And beyond that, your honor, because the sentence imposed on the... Is there a liability on his part in another case? Was he charged? Your honor, I can only say that I'm not trial counsel in the matter, so I don't know personally if he's been charged separately in a different case. At the very least, why didn't she get a four-level decrease for a minor role based on this evidence? She only got a two-level decrease. Yeah, that's correct, your honor. And the government's position is that based upon her instrumental role in this, were it not for her allowing the property to be... The 22 to be on her property, the conspiracy would essentially fall apart because they would have to... Would a probation office recommend four-level decrease? I'm sorry, your honor? What was recommended to the district judge? Wasn't it a four-level decrease for a minor role? Right, your honor. And the government's argument was that it should be... The government objected to that based on this evidence? Yes, your honor. But as the district court had noted in the sentencing record, docket entry 187, page 30, that regardless of whether... Notwithstanding the decision as to the role adjustment, two-level reduction, four-level reduction, the court would have still imposed a 24-month sentence on Ms. Matute. So ultimately, the 24-month sentence is reasonable. Matute does not challenge that as being unreasonable. So the government would ask the court to affirm it on that basis. Your honors, unless the court has any other questions, the government will rest on its briefs, and we ask that you affirm the decisions of the lower court. All right. Thank you, Mr. Alexander. And Mr. Finn, you've reserved some time. Thank you very much, your honor. Judge, to provide what I consider the defense responses to the questions asked of the government, the reason that the consent was not... That the oral consent was not limited by Mr. Correoso was because his understanding was, as the court has indicated, they would just scroll through his phone, and he thought he was prepared for that. Second judge, even though I never got to it, the government mentioned the statements given by Mr. Correoso, which I raised as my second objection, and all I would say to that is that questions shape the narrative. That's why we don't allow leading questions on direct. Mr. Correoso was never asked, when did you leave for Texas? He was asked when you left the yard. Thank you very much. All right. Thank you, Mr. Finn. Mr. Gavarria. Your honors, what's been ignored has been in and was highlighted by the renewed motion for by the government's own disclosure and essentially finding out that Mr. Anapolis, in fact, had been present based on the cell site analysis at Ms. Matute's home on April 22nd when the pallets were delivered. In addition, it showed based on the cell data that Mr. Anapolis was, in fact, in touch with other of the co-conspirators who were, in fact, charged with stealing the perfume. Is he claiming in his affidavit that she took the fall for him and it was all his doing? His affidavit basically states that he was the one that arranged with Mr. Correoso to allow the property to be used to store that property. Was he separately charged? I don't believe he was separately charged, your honor, but I'm not certain. Judge, and the court pointed out a critical question. What did she know and when did she know it? And it appears that a lot of the so-called evidence to show her knowledge was when law enforcement was there knocking at her door at 6 a.m. FBI agents. She didn't trust the FBI agents? I mean, they put forth a lot of circumstantial evidence from which it seems a jury could make this conclusion, right? I still believe it's lacking with respect to knowledge. I asked the courts. She didn't say her ex-husband, she didn't put any evidence that her ex-husband stored things on the property, anything to that effect? She did not testify, your honor, nor did she present any evidence. Okay. Thank you. Thank you, counsel. Thank you. The next case is Randolph and Tabitha Sellers v. Rushmore Loan Management. Mr. Warrick is here for the appellant. Mr. Lynch for the appellee. All right, thanks. Mr. Finn, I see you were appointed by the court to represent Mr. Correoso. The court appreciates your service. Thank you.